1

2

3

4

5

6                    UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF WASHINGTON
7

8   VAN WELL NURSERY, INC., a
    Washington Corp., HILLTOP          NO. CV-04-0245-LRS
9   NURSERIES, LLC, a Michigan
    limited liability company,
10
                Plaintiffs,
11
          v.                           **OPINION AND ORDER ON MONY
12                                     LIFE'S AND VAN WELL'S MOTIONS
    MONY LIFE INSURANCE COMPANY,       FOR SUMMARY JUDGMENT AND
13  a New York corporation; A/B        HILLTOP NURSERIES' MOTION TO
    HOP FARMS, INC., a Washington      SUBSTITUTE PARTY**
14  corporation; BENNETT G.
    BRULOTTE and TRACY A
15  BRULOTTE, individually and
    their marital community;
16  WALLA WALLA PARCEL NO. 31-07-
    23-11-00-02
17
                Defendants.
18  _____

19  MONY LIFE INS. CO., a N.Y.
    corp.,
20
                Third-Party Plaintiff,
21

22  NATIONAL LICENSING ASSOC.,
    LLC., a Washington limited
23  liability company (f/k/a
    Nursery Licensing
24  Association, LLC),

25              Third-Party Defendant.

26  _____

    ORDER ~ 1

**BEFORE THE COURT ARE:** 1) Mony Life's Motion for Summary Judgment (Ct. Rec. 65); 2) Van Well Nurseries' Motion for Summary Judgment (Ct. Rec. 61) and 3) Hilltop Nurseries' Motion to Substitute Party (Ct. Rec. 83). Having considered the parties' arguments and for the reasons stated below, the Court enters the following memorandum and order.

**BACKGROUND**

This is an action for plant patent and trademark infringement involving live apple trees and the marks used to designate them. In September 2002, third party defendant National Licensing Association ["NLA"] filed an action asserting plant patent and trademark infringement (as well as false designation of origin, counterfeiting, unfair competition, and Washington Consumer Protection Act claims) for United States Patent No. 4,839 Plant Patent [" '839 patent"], entitled "Spur-Type Red Delicious Apple Tree" and trademark Number 1,952,536 for "Scarlet Spur" and Number 1,241,362 for "Smoothee." These claims were dismissed on May 25, 2004 pursuant to a finding by this Court that the NLA did not have standing to assert these claims. Ct. Rec. 54, Cause No. CT-02-5077-LRS. On July 9, 2004, the same claims were refiled in the names of plaintiffs Van Well Nursery, Inc ["Van Well"] and Hilltop Nurseries, LLC. Defendant Mony Life responded with numerous defenses and counterclaims including, but not solely, invalid trademark registration based on both the generic nature of the supposed mark and fraud, abandonment, fair use, and lack of standing. Mony Life has also asserted counterclaims and third party claims against Van Well, Hilltop and NLA for unfair business practices, misuse of the patent and trademark statutes, violations of state and federal antitrust statutes, and

ORDER ~ 2

violations of the Washington Consumer Protection Act.  Mony Life seeks declaratory relief that the trademarks herein are generic, for the Court to cancel the trademarks and to declare this an "exceptional case" for the purpose of awarding attorney fees.  The remaining defendants have not answered.

On January 24, 2005, the plant patent claims asserted against Mony Life were dismissed by entry of summary judgment.  Mony Life's present motion for summary judgment seeks dismissal of the plaintiffs' remaining claims asserted against it, cancellation of the trademarks, and a finding that the plaintiffs have misused the patent and trademark statutes qualifying this an "exceptional case."  Plaintiff Van Well's motion for summary judgment seeks judgment as a matter of law against defendants A/B Hop Farms and the Brulottes on its claims of infringement of the '839 patent.  This motion is unopposed.  Plaintiff Hilltop Nurseries, LLC also moves this Court to substitute in its stead "Hilltop Fruit Trees, LLC."

## I.    Hilltop Nurseries' Motion to Substitute Party (Ct. Rec. 83)

Plaintiff Hilltop Nurseries moves pursuant to Federal Rule of Civil Procedure 17(a) to substitute in its stead Hilltop Fruit Trees, LLC on the basis that plaintiff believes Hilltop Fruit Trees, LLC is the real party in interest, owning the exclusive license to the Smoothee trademark.  Inter-Plant Patent Marketing, Inc. is the "last listed owner" appearing on the Smoothee trademark registration.  On June 15, 1995 Inter-Plant entered into a licensing agreement with Hilltop Nurseries, LLC regarding the Smoothee trademark.  Plaintiff asserts that "through a regrettable communication error" which was not discovered by plaintiff's attorney until following the close of discovery, this lawsuit

was filed in the name of Hilltop Nurseries though that entity had transferred its interest in the Smoothee trademark to Keybank, who had in turn transferred it to a company which became Hilltop Fruit Trees, LLC, prior to the commencement of this action.  In the motion, Hilltop Fruit Trees, LLC agrees to bind itself to all previous ruling and motions in this matter, as well as previous discovery, and the outcome of this matter.

Mony Life opposes the motion on the basis it is an improper attempt to correct Article III standing and furthermore that Hilltop Fruit Trees cannot establish standing.  However, in light of Hilltop Fruit Trees' agreement to be bound by the rulings and discovery in this case and the Court's ruling on the motion for summary judgment, the Court finds there is no prejudice in substituting Hilltop Fruit Trees at this time.  In permitting the substitution, the Court makes no finding as to the effect, validity, or enforceability of the various transfers of interest in the Smoothee mark.  The case caption of all future pleadings shall reflect the substitution of Hilltop Fruit Trees, LLC as a plaintiff.

**II. MONY LIFE'S MOTION FOR SUMMARY JUDGMENT (CT. REC. 65)**

*A. Undisputed Facts*

The Scarlet Spur trademark was registered by Van Well on January 30, 1996.  At least as early as April 1981, Van Well began using the term Scarlet Spur in conjunction with live apple trees propagated from the cultivar of red delicious apple tree covered by the '839 patent.  The '839 patent expired on May 9, 2000.  The trademark for Scarlet Spur expressly disclaims the use of term "Spur" apart from "Scarlet Spur," as trademarked.  Van Well claims the use of the term "Scarlet Red Delicious"

infringes the "Scarlet Spur" trademark. The commercial fruit industry uses a number of different designations to denote the Scarlet Spur variety of apple tree, including "Scarlet", "Scarlet Red", and "Reds-Scarlet." Other apple varieties also use the term "scarlet" in their nomenclature.

On April 16, 1968, U.S. Plant Patent 2, 803 ('803 patent) was issued for a new variety of Golden Delicious apple tree discovered and propagated by Carl R. Gibson. The patent expired on April 16, 1985. Since as early as 1976, the term "Smoothee" has been used by Hilltop to denominate the Gibson cultivar of Golden Delicious apple tree described in the '803 patent. Mony Life Statement of Facts ["SOF"] ¶ 29. Hilltop Orchards and Nurseries initially applied for placement of "Smoothee" on the Principal Register, but the Patent and Trademark Office ["PTO"] denied this request because the mark was deemed "a variety name for the particular trees rather than a trademark" and "[v]ariety names are not regarded as subject matter for trademark registration." Mony Life SOF ¶ 26, Ex. 40, p. 10. Hilltop Orchards thereafter petitioned for revival of the application, claiming the Smoothee mark "from 1976 and even before", had been consistently "claimed" as a "house brand" and that it had not "dedicated it to the public as a varietal denomination for the particular strain (Gibson) of Golden delicious apple." Mony Life Ex. 40. Hilltop represented to the patent examiner that Hilltop "intends to use the name 'Smoothee' as a house brand name to cover a whole group of improved golden delicious apple trees..." Mony Life Ex. 40, pg 18. On June 7, 1983, Hilltop Orchards and Nurseries received the U.S. Trademark registration for "Smoothee."

Defendant Mony Life Insurance is a New York corporation which owns or has owned orchard properties within this judicial district. *Answer* ¶ 4. Mony Life loaned money to A/B Hop Farms, Inc. in 1991, and subsequently in 1993, 1995, and 1996 (mortgage) and 1998 (mortgages). These loans were secured by properties, improvements and equipment located in Benton, Grant and Walla Walla counties. A/B Hop Farms' loans subsequently went into default, and on or after November 27, 2001, ownership, possession and title to the referenced properties was transferred to Mony Life through Quit Claim Deeds in Lieu of Foreclosure. In conjunction with taking title to the properties, Mony Life hired a management company to maintain the properties until they could be sold. In addition, it entered into a sales agreement with Clark Jennings & Associates to market the properties.

Between 1991 and 2001, Mony Life had a number of appraisals done on all or part of the A/B Hop farms properties to value the assets. In the appraisals, the two relevant apple tree varieties were variously identified or abbreviated as "Scarlet Delicious", "Scar Del", "S Del", "Scarlett Red Delicious", "Scarlet Red Delicious", "Apples (Scarlett)", "Scarlet III early Red Delicious", "'Smoothee' early Golden Delicious", "Smoothee Golden", "Smoothie Golden Delicious", and/or "Red Delicious/Scarlet."

In conjunction with their marketing activities, Clark Jennings prepared sale materials for each property describing the properties, their improvements and equipment. Ex. 67, Ex. 75. This lawsuit involves the sales brochure regarding the "Wallula Orchard Property." Complaint at 9. Stephen J. Weber, President of Clark Jennings, has declared he

ORDER ~ 6

recalls the Wallula Orchard property sales brochure being disseminated to approximately 4-5 persons.[1]   Mony Life Ex. 75, ¶ 6    The sales brochure contains "fewer than five" references to "Smoothie" or "Smoothies" and "fewer than eight" references to the term "Scarlet", appearing variously as "Scarlet Reds", "Scarlet Red Delicious", "Red Delicious/Scarlet", and "Scarlet."   None of the appraisals nor the Sales Brochure use the term "Scarlet Spur."

*B. Legal Standard*

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir. 1997). A principal purpose of the summary judgment procedure

---

[1] The single-page excerpt of the 30(b)(6) deposition provided by plaintiffs at Ct. Rec. 81, Ex. F does not contradict the Weber Declaration, nor support plaintiffs' responsive statement of fact No. 39 suggesting the material was distributed to approximately 30 persons.

ORDER ~ 7

is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (*quoting Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

Accordingly, the Court must determine, viewing the evidence in the light most favorable to the plaintiffs, whether there are any genuine issues of material fact. "Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002) (quotation marks and citations omitted).

*C. Analysis*

In evaluating Mony Life's motion for summary judgment, it is easiest to frame the relevant issues in the context of a trademark infringement action. Mony Life's motion raises essentially issues that are defenses

to an infringement action, but which have also been asserted herein as counterclaims. The Lanham Act allows the holder of a protectable trademark to hold liable any person who, without consent, "use[s] in commerce any ... registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services" which is likely to cause confusion. 15 U.S.C. § 1114(1)(a). Before infringement can be shown, the trademark holder must demonstrate that it owns a valid mark, and thus a protectable interest. *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002). Once the trademark holder shows that it has a protectable interest, the holder must show that the alleged infringer's use of the mark "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a) & (b); *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 900 (9th Cir. 2002). The alleged infringer has a number of defenses available.

Mony Life's motion for summary judgment asserts five independent bases for dismissal of the remaining claims asserted against it by plaintiffs: lack of standing, genericness, fraud, abandonment, and nominative fair use.

1. Genericness

There are five categories of trademarks: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. KP *Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005). "The latter three categories are deemed inherently distinctive and are automatically entitled to protection because they naturally 'serve[ ] to identify a particular source of a product....' " *Id.* (*quoting Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112

S.Ct. 2753, 120 L.Ed.2d 615 (1992)).  However, generic marks are not capable of receiving protection because they identify the product, rather than the product's source.  *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985).  "Generic terms are not registerable, and a registered mark may be canceled at any time on the grounds that it has become generic."  *Id*.  The reason for this rule is plain.  "To allow trademark protection for generic terms, i.e. terms which describe the genus of goods being sold, even when these have been identified with a first user, would grant the owner of the mark a monopoly since a competitor could not describe his goods as what they are."  *CES Publishing Corp. v. St. Regis Publications, Inc.*, 531 F.2d 11, 13 (2d Cir. 1975).

The legal status of commercial symbols can change over time to reflect shifts in consumer perception of their significance.  Even the most distinctive symbols-coined words having no descriptive or suggestive quality-may become generic if they are adopted by the public as the name of the product rather than as the mark of the producer.  Familiar examples are Aspirin, Cellophane, and Thermos, all of which were once, but are no longer, trademarks of a single manufacturer. *See Bayer Co. v. United Drug Co.*, 272 F. 505 (S.D.N.Y. 1921); *DuPont Cellophane Co. v. Waxed Products Co.*, 85 F.2d 75 (2d Cir. 1936), cert. denied, 299 U.S. 601, 57 S.Ct. 194, 81 L.Ed. 443 (1936); *King-Seeley Thermos Co. v. Aladdin Industries, Inc.*, 321 F.2d 577 (2d Cir. 1963).

In these cases, the courts held that, due to changes in market conditions, the public no longer perceived the trademark significance of the symbol at issue; rather, consumers had adopted the mark as the name

of the product behind the symbol. As the Aspirin, Cellophane and Thermos examples suggest, the symbols that fall most readily into public usage as generic names are often associated with products that are themselves novel items which the consumer has never before encountered. In such circumstances, the mark placed on the product cannot function to distinguish one manufacturer from another because there is little or no brand competition. Thus, the public recognizes the new symbol not as a brand name but as the name of a new product.

As McCarthy on Trademarks and Unfair Competition warns, one reason why symbols identifying new products often become adopted as the name of the product is that the trademark owner does not take precautions to protect the significance of the trademark when the product is first used. 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 12:26 (4th ed. 2003). The public is frequently not offered an easily recognizable generic name *in addition* to the term which the seller considers to be its trademark. *Id*. When using the product, the manufacturer may choose a symbol that has the capacity to be a brand discriminator but then uses the word as if it were the name of the product. In such cases, it is understandable the name slotted to be the trademark catches on as the name of the "thing" itself. *Id*.

To determine whether a term has become generic, courts look to whether consumers understand the word to refer only to a particular producer's goods or whether the consumer understands the word to refer to the goods themselves. *Park 'N Fly*, 718 F.2d at 330. If buyers understand the term as being identified with "a particular producer's goods or services, it is not generic." *Surgicenters of Am., Inc. v.*

*Medical Dental Surgeries Co.,* 601 F.2d 1011, 1016 (9th Cir. 1979).  "But if the word is identified with all such goods or services, regardless of their suppliers, it is generic."  *Id.(citing King-Seeley Thermos Co. v. Aladdin Indus., Inc.,* 321 F.2d 577, 579 (2d Cir. 1963)).  Courts have often determined whether a mark is generic using the "who-are-you/what-are-you" test: "A mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the generic name of the product answers the question 'What are you?' " *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.,* 198 F.3d 1143, 1147 (9th Cir. 1999)((quoting *Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1391 (9th Cir. 1993) (quoting *1 J. Thomas McCarthy, Trademarks and Unfair Competition,* § 12.01 (3d ed. 1992))) (alterations omitted).

For decades the U.S. Patent and Trademark Office and case law have treated varietal names as generic designations that do not and can not function as trademarks.  *See discussion, In re KRB Seed Company, LLC,* Serial No. 76289621 (TTAB 9/19/05).  Indeed, "when others begin to sell it after expiration of the breeder's protection period they need to call it by the name that it is known or otherwise consumers will not know what they are buying."  *Id.*

The plaintiff bears the ultimate burden of proof in a trademark infringement action. *Tie Tech, Inc. v. Kinedyne Corp.,* 296 F.3d 778, 783 (9th Cir. 2002).  "A necessary concomitant to proving infringement is, of course, having a valid trademark; there can be no infringement of an invalid mark."  *Id.(citing Yarmuth-Dion, Inc. v. D'ion Furs, Inc.,* 835

F.2d 990, 992 (2nd Cir. 1987)).  The validity of the trademark is "a threshold issue" on which the plaintiff bears the burden of proof.  *Id.*

Federal registration of a mark constitutes prima facie evidence of the validity of the mark.  15 U.S.C. § 1057(b).  For this reason, a plaintiff alleging infringement of a federally-registered mark is entitled to a presumption that the mark is not generic.  *Anti-Monopoly, Inc. v. General Mills Fun Group, Inc.*, 684 F.2d 1316, 1319 (9th Cir. 1982).  "In essence, the registration discharges the plaintiff's original common law burden of proving validity in an infringement action."  *Tie Tech, Inc.,* 296 F.3d at 783 (*citing Vuitton et Fils S.A. v. J. Young Enters., Inc.*, 644 F.2d 769, 775 (9th Cir. 1981)).  The defendant may, of course, overcome the presumption "by a showing by a preponderance of the evidence that the term was or has become generic."  *Anti-Monopoly*, 684 F.2d at 1319.

In the present case, plaintiffs seek trademark protection for the terms Scarlet Spur and Smoothee which are federally registered trademarks.  Accordingly, the marks are presumed valid, and the burden of proving that the marks are generic rests upon Mony Life. *Filipino Yellow Pages, Inc.,* 198 F.3d at 1146.  The question then becomes what evidence must be produced to overcome the presumption.  The Ninth Circuit noted in *Tie Tech* at the summary judgment stage that all inferences from facts must be drawn most favorably to the non-moving party.   In evaluating Mony Life's motion for summary judgment, all inferences must be drawn in favor of plaintiffs, as the non-moving party.  Although the genericness issue is generally viewed as an intensely factual issue, assuming Mony Life "can demonstrate through law, undisputed facts, or a

combination thereof that the mark is invalid, the evidentiary bubble bursts and the plaintiff cannot survive summary judgment." *Tie Tech*, 296 F.3d at 783.    In the face of sufficient and undisputed facts demonstrating genericness, as in this case, the registration loses its evidentiary significance. *Id.*

The parties agree that a varietal designation can not be trademarked.  Plaintiffs dispute that Scarlet Spur and Smoothee are in fact the proper varietal names for the relevant apple trees covered by the '803 and the '839 patents.  Plaintiffs contend the proper varietal/generic designations for the patented trees are the "Snipes cultivar" ("cv.") and the "Gibson cultivar."  However, the relevant issue here is not what the plaintiffs or the defendants view is the "*correct*" generic name to identify these varieties of commercial apple trees. Rather, the question for the Court to  consider is how "the relevant public," or the consumers interested in purchasing the apple trees, perceive the marks in issue.  *Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 821 (9th Cir. 1996); *see also, e.g.*, 15 U.S.C. § 1064(3) (statutory test for genericness).  Specifically, the question presented here is whether Scarlet Spur and Smoothee have undisputedly become known to the relevant public to be names of trees descending from the respective patented cultivars rather than a brand identifier for the source of the trees.  Factors to be considered in making this determination include the plaintiffs' own use of the marks, competitors' usage, dictionary definitions, media usage, testimony from others in the same field, and consumer surveys, among others.

Analyzing the undisputed evidence, and after conducting the "who-are-you/what-are-you" test, this Court concludes that Scarlet Spur and Smoothee answer the "what are you?" question, and are thus generic terms. Significantly, despite plaintiffs claim that "Scarlet Spur" and "Smoothee" are not the generic terms for its apple trees, the record is full of examples where plaintiffs themselves use the terms as the name of the patented variety of tree when discussing their product. Van Well's online catalog lists "Scarlet Spur" as one of the "World's Best Apple Varieties" because Scarlet Spur "is America's earliest coloring, solid blush Red Delicious." Mony Life Ex. 78. Hilltop Fruit Trees, LLC's online catalog and price list lists Smoothee as one of its "Varieties Budded for 2006." Mony Life Ex. 79.

Similarly, the record is replete with examples of other fruit tree growers/sellers who use the names Scarlet Spur and Smoothee (or variations thereof) as a name of an available apple tree variety or cultivar. For example, the Willow Drive Nursery's 2006 inventory invites purchasers to "[p]lant an orchard of Smoothee" and "you will find Smoothee a golden investment." Mony Life Ex. 81. Mori Nurseries 2005 online catalog describes "Smoothee Golden Delicious" as the "common name" for "[t]he latest and finest variety of the Golden Delicious." It also lists its latin name as "Malus Smoothe G.Del.Df.Pommier." Mony Life Ex. 137.

Mony Life has provided extensive evidence of the use of these terms (or variations thereof) by the general public, the apple industry, governments (United States and foreign), academia, and agricultural research centers, as names for the cultivar, strain, or variety of the

patented trees herein.  Moreover, Mony Life has offered the declaration of its expert, James Berger, who researched whether Scarlet Spur and Smoothee are presented as trademarked brand names or as generic varieties or cultivars.  Mony Life Ex. 134. Relying upon the publications provided by Mony Life as exhibits in this case, as well as internet searches for the terms Scarlet Spur and Smoothee, Berger concludes that these terms have been used in these sources to designate the *varieties* of trees at issue in this case, rather than the *source* of the trees.  Similarly, in Berger's analysis he did not find "common usage" of the terms Snipes or Gibson as an identifier for these trees.

In response to Berger's declaration, plaintiffs offer undisputed evidence that Van Well and one other competitor nursery use the alternative name "Gibsons" rather "Smoothee" in selling the '803 patented trees.  However unless plaintiffs could offer evidence suggesting "Gibsons" is a commonly used alternative means to describe the tree, the Court does not find a use or the availability of an alternative name as particularly relevant to the question of how the relevant public has appropriated the term Smoothee. *See generally, Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 144 (2d Cir. 1997); *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 305-06 (3d Cir. 1986).

Similarly irrelevant to this question is plaintiffs' expert Gabriel Gelb's conclusion that Scarlet Spur and Smoothee trademarks have been widely promoted and utilized by the plaintiffs virtually always using the registered trademark symbol "®".  While the record undisputedly demonstrates plaintiffs' routine use of the registered trademark symbol, as years of case law demonstrates, the use of the symbol alone does not

necessarily provide protection from a trademark becoming generic. The extensive use of trademark symbols does not shed any light on the questions at hand regarding the context of plaintiffs' actual usage of the terms Scarlet Spur and Smoothee and whether the relevant public perceives these terms as designating varieties of patented trees or indicating the source of the trees.

Plaintiffs argue Mony Life's evidence is insufficient to overcome the presumption of non-genericness because Mony Life does not present survey evidence and because the evidence it presents fails to target the "relevant public" – whom they define as "growers...who buy or might buy live apple trees in commercial quantities." *See Gelb Declaration, Plaintiffs' Ex. E, ¶ 13.* The Court rejects these arguments. The "relevant public" is a broad term which has generally been said to imply the "actual or potential purchasers of the goods or services." *Magic Wand, Inc. v. RDB, Inc.*, 940 F.2d 638, 19 U.S.P.Q.2d 1551 (Fed. Cir. 1991). In this case, the Court agrees that the relevant public are participants in the fruit tree industry who purchase or deal with these trees, which presumably are primarily growers. However, in deciding genericness, evidence of the relevant public's understanding of a term "may be obtained from *any competent source*." *In re Merrill, Lynch, Pierce Fenner & Smith, Inc.*, 828 F.2d 1567, 1570 (Fed.Cir. 1987) (*emphasis added*). Thus, Mony Life may properly rely upon evidence of the terms' use in the media, by the mark's owners, by competitors, by third parties, by industry and trade press, and by government and research entities engaged in the trade.

ORDER ~ 17

Although in many situations a survey is desirable to establish the public's perception, such evidence is not required to resolve issues of genericness. The Court finds given the somewhat limited size of the relevant group here, the numerous examples submitted by Mony Life are sufficient to determine how the relevant group perceives these terms. *See Loglan Institute, Inc. v. Logical Language Group, Inc.*, 962 F.2d 1038 (Fed. Cir. 1992).

A name of a thing can not be a trademark for that thing. 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 12:1 (4th ed. 2003). "The name of a product itself—what it is—is the very antithesis of a mark." *Id*. The function of a trademark is to identify and distinguish the goods or services of one seller from those sold by all others. *Id*. Despite plaintiffs' stated intention to have Scarlet Spur and Smoothee be considered "house brand names," the record simply does not show the existence of *any* such actual use. Furthermore, there is no evidence in the record suggesting the common name for the '839 patented trees is the Snipes cultivar or that the common name for the '803 patented trees is the Gibson cultivar. Regardless of plaintiffs' intentions, the public has chosen to call these trees Scarlet Spurs and Smoothees rather than a Scarlet Spur brand Snipes cultivar apple trees or Smoothee brand Gibson cultivar apple trees. Mony Life provides extensive evidence that the terms Smoothee and Scarlet Spur have been and continue to be used generically to identify a variety of apple trees which the plaintiffs sell. Plaintiffs' response to this motion even admits that these trademarks "are used by their respective nurseries to identify a variety of tree..." *Plaintiffs' Response to Summary Judgment*

*at 6.*  Though plaintiffs state that the marks also serve to identify "that those trees emanate from the nurseries," a name simply can not function both as a generic term for the product itself *and* serve as a trademark.  *Id.* (The concepts of "generic name" and "trademark" are mutually exclusive).  As such the terms Scarlet Spur and Smoothee are not serving as trademarks and are unprotectable, regardless of plaintiffs intentions to the contrary.

Based on this evidence, the Court concludes there is no genuine issue of material fact as to whether the words Scarlet Spur and Smoothee are generic.  A reasonably minded jury could only conclude from the evidence produced that these terms are generic terms for a variety of apple trees.[2]  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The Court understands this is a significant determination.  However, where it is demonstrated that the trademark has gone so far toward becoming the exclusive descriptor of the product, other growers as well as consumers cannot operate in the market effectively without using these names to designate the product they are selling or buying.  "The problem is not that language is so impoverished that no other words could be used to denote these products, but that if no other words have emerged as synonyms it may be difficult for a seller

---

[2]  It is therefore unnecessary to consider whether Mony Life is entitled to summary judgment on the additional grounds that the registration was fraudulently obtained, that the trademark has been abandoned, nominative fair use, and lack of standing.

ORDER ~ 19

1  forbidden to use one of the trademarked words or phrases to communicate

2  effectively with consumers." *Ty Inc. v. Softbelly's Inc.* 353 F.3d 528,

3  532 (7th Cir. 2003).

4  C. Cancellation

5      Mony Life's counterclaim also seeks cancellation of the registered

6  marks herein.  While formal cancellation proceedings are held before the

7  PTO, this Court may also direct the PTO to cancel a mark under 15 U.S.C.

8  § 1119, which provides:

9          In any action involving a registered mark the court may determine
           the right to registration, order the cancelation of registrations,
10         in whole or in part, restore canceled registrations, and otherwise
           rectify the register with respect to the registrations of any party
11         to the action. Decrees and orders shall be certified by the court
           to the Director, who shall make appropriate entry upon the records
12         of the Patent and Trademark Office, and shall be controlled thereby.

13 15 U.S.C. § 1119.

14     "[W]hen a court determines that a mark is either a generic term or

15 a descriptive term lacking secondary meaning, the purposes of the Lanham

16 Act are well served by an order cancelling the mark's registration."

17 *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 792 (5th

18 Cir. 1983).  District courts have been reversed for refusing to order the

19 cancellation of registrations for claimed marks found incapable of

20 serving as marks.  *See Gracie v. Gracie*, 217 F.3d 1060 (9th Cir.

21 2000)(citing authorities*).

22     However, the Court notes Section 1119 of the Lanham Act provides

23 that the Court may rectify the trademark register with respect to "*the

24 registrations of any party to the action*." This phrase suggests that a

25 complaint for trademark cancellation should proceed against the party who

26 currently *owns* the trademark. *Informix Software, Inc. v. Oracle Corp.*,

927 F. Supp. 1283, 40 U.S.P.Q.2d 1153 (N.D. Cal. 1996) ("Thus, the Court finds that an exclusive licensee of a trademark is not a proper defendant in a suit for cancellation of [the registration of] that trademark. Indeed, the owner of the trademark is the only proper defendant."); *Iowa Health Care System v. Trinity Health Corp.*, 177 F. Supp. 2d 897, 911 (N.D. Iowa 2001) (claim for cancellation can only be brought against the owner of the registration, not against a licensee.); *cf. Jeno's Inc. v. Commissioner of Patents & Trademarks*, 498 F.Supp. 472, 477 n. 2 (D.Minn.1980) ("This Court may not act [pursuant to § 1119] unless some party stands before it with a registered mark."). Thus, the Court finds that an exclusive licensee of a trademark is not a proper defendant in a suit for cancellation of that trademark.

Accordingly, as the owner of the *Smoothee* trademark does not stand as a party before the Court, the Court will not order the cancellation of Registration No. 1,241,362 for the trademark "Smoothee." However, as Van Well Nursery is the exclusive owner of the Scarlet Spur trademark, at this time the Commissioner of Patents and Trademarks is ordered to cancel Registration No. 1,952,536 for the trademark "Scarlet Spur" pursuant to 15 U.S.C. § 1119.

D. Attorney Fees

Mony Life seeks an award of attorneys fees under the Lanham Act, holding "the NLA, Van Well Nursery, and Hilltop Nurseries jointly and severably liable for Mony's attorneys' fees and costs in defending itself against a succession of groundless lawsuits." Mony Life's Reply, Ct. Rec. 99 at 14. The Lanham Act expressly provides for an award of attorney's fees to the prevailing party at the discretion of the court

in "exceptional cases." 15 U.S.C. § 1117(a).  The Ninth Circuit has expressly held that the same standard for "exceptional" applies to prevailing defendants as well as prevailing plaintiffs.  *Gracie v. Gracie*, 217 F.3d 1060, 1071 (9th Cir. 2000).  While the term 'exceptional' is not defined in the statute, generally a trademark case is exceptional for purposes of an award of attorneys' fees when the a plaintiff has brought a case that can be characterized as "malicious, fraudulent, deliberate or willful," *id*., or "groundless, unreasonable, vexatious, or pursued in bad faith," *Stephen W. Boney, Inc. v. Boney Services, Inc*., 127 F.3d 821, 827 (9th Cir. 1997).

In cause number 02-CV-5077-LRS, the Court previously determined Mony Life was not eligible for an award of attorney's fees in part because Mony Life did not qualify as a prevailing party therein. However, in this case, in light of the Court's ruling on summary judgment herein, Mony Life is a prevailing party, having received at least "some relief on the merits" against the named plaintiffs who brought this suit but not against the third party defendant. *Buckhannon Bd. & Care Homes, Inc. v. W. Va. Dep't of Health and Human Res*. , 532 U.S. 598, 603-05 (2001).  Proving an "exceptional" case can be difficult given the standards set forth above.  The Court believes a decision on this issue should abide the conclusion of the case and resolution of all remaining claims.

///
///
///
///

ORDER ~ 22

Accordingly, the attorney fees' aspect of Mony Life's motion for summary judgment is denied *without prejudice* to be renewed in a separately filed motion brought at the conclusion of the case.

**III.  Van Well Nurseries' [Partial] Motion for Summary Judgment (Ct. Rec. 61)**

Plaintiff Van Well Nursery has moved for partial summary judgment on its claim for infringement of United States Patent No. 4,839 Plant Patent [" '839 patent"], entitled "Spur-Type Red Delicious Apple Tree 4,839 asserted against defendant A/B Hop Farms and the individual Brulotte defendants.  Because these defendants have in fact admitted and have not disputed any particular fact, as submitted by Van Well in its statement of material facts, all facts submitted and properly supported by admissible evidence are deemed to be admitted.  The motion is unopposed.

A. Legal Standard

When a summary judgment motion is unopposed, a court must "determine whether summary judgment is appropriate--that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." *Anchorage Associates v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir. 1990). A court "cannot base the entry of summary judgment on the mere fact that the motion is unopposed, but, rather must consider the merits of the motion." *United States v. One Piece of Real Property, etc.*, 363 F.3d 1099, 1101 (11th Cir. 2004). A court "need not sua sponte review all of the evidentiary materials on file at the time the motion is

granted, but must ensure that the motion itself is supported by evidentiary materials." *Id.*

As discussed below, the Court finds Van Well has met its evidentiary burdens on its patent infringement claim asserted against A/B Hop Farms and the Brulottes and that as to these defendants, it is entitled to judgment as a matter of law on the limited issue of patent infringement liability.

B.    Undisputed Material Facts

1.    On April 20, 1982, a plant patent 4,839 ('839 patent) was issued to Van Well Nursery, Inc.

2.    The '839 patent expired on May 9, 2000.

3.    As early as 1984, A/B Hop Farms had purchased and planted trees of the type covered by the '839 patent from Van Well Nursery.

4.    On February 20, 1996, Bennett "Ben" Brulotte and defendant Arnold Brulotte each acquired an one-half undivided interest in the Wallula Orchard property, located in Walla Walla County Washington.

5.    In 1995-1996, A/B Hop Farms, Inc. and Ben Brulotte propagated and planted approximately 76,614[3] of the type of trees described in the '839 patent on the property referred herein as the Wallula Orchard.

6.    These trees were propagated using budwood from '839 patented trees purchased from Van Well Nursery.

7.    These trees planted on the Wallula property were planted without the permission of Van Well nursery.

C.    Analysis

1. Validity of the Patent

---

[3] It is not obvious from the record how the number 76,614 was derived. However, as the approximation is unopposed by the defendants, the Court does not question its accuracy.

ORDER ~ 24

A duly issued patent is presumed valid.  35 U.S.C. § 282; *Medical Instrumentation and Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1220 (Fed.Cir. 2003); *Schumer v. Lab Computer Sys.*, 308 F.3d 1304, 1315-16 (Fed.Cir. 2002).  The '839 patent, therefore, is presumed valid unless the defendants produce evidence establishing its invalidity.   Here, there is no challenge to the validity of the patent, and consequently, the Court concludes as a matter of law that as to A/B Hop Farms and the individual Brulotte defendants in this action, the now expired '839 patent was valid and is enforceable.

2. Infringement

Determining patent infringement requires that the court determine whether someone (1) without authority (2) makes, uses, offers to sell, sells, or imports (3) the patented invention (4) within the United States, its territories, or its possessions (5) during the term of the patent. 35 U.S.C. § 271(a); *Cyrix Corp. v. Intel Corp.*, 77 F.3d 1381 (Fed.Cir. 1996).  For purposes of proving the third element, in a plant patent infringement action the patentee must prove under 35 U.S.C.A. § 163 that the alleged infringing plant is an asexual reproduction, that is, that it is the progeny of the patented plant.  *Imazio Nursery v Dania Greenhouses,* 69 F3d 1560 (Fed.Cir. 1995).

Based upon the undisputed facts recited above, the Court concludes Van Well has sustained its burden of proving infringement on the part of defendants A/B Hop Farms and Brulotte.  Van Well is entitled to partial summary judgment on the issues of validity of the '839 patent and patent

infringement liability as to these defendants.  The case will proceed on the issues of damages and willfulness.

**IV.   CONCLUSION**

For the reasons stated above, **IT IS HEREBY ORDERED:**

1.   Plaintiff Hilltop Nurseries, LLC's Motion to Substitute Party (Ct. Rec. 83) is hereby **GRANTED**.  Hilltop Fruit Trees LLC shall be substituted for Hilltop Nurseries and shall be bound by all prior and future rulings herein.  All future pleading captions shall be modified to reflect the substitution.  The Clerk of the Court is directed to amend the case caption accordingly.

2.   Plaintiff Van Well Nurseries' Motion for [partial] Summary Judgment (Ct. Rec. 61) is **GRANTED**.

3.   Defendant Mony Life's Motion for Summary Judgment (Ct. Rec. 65) is **GRANTED IN PART** and **DENIED IN PART**:

a. The motion is **GRANTED** to the extent the Court:

i. Grants Mony Life's counterclaims seeking to declare the Scarlet Spur and Smoothee trademarks generic;

ii. Dismisses all remaining claims asserted in the complaint against Mony Life;

iii. Dismisses and all trademark infringement, false designation of origin, and counterfeiting claims against the remaining defendants;

iv. Grants Mony Life's counterclaim for cancellation of *Van Well Nursery's* registration for the trademark "Scarlet Spur."  The

ORDER ~ 26

Commissioner of Patents and Trademarks is ordered to cancel Registration No. 1,952,536 for the trademark "Scarlet Spur" pursuant to 15 U.S.C. § 1119.

b. The motion is **DENIED** to the extent it requests cancellation of Registration No. 1,241,362 for the trademark "Smoothee" and the Court's present declaration of this case as an "exceptional case." Mony Life may renew the issue of "exceptional case" status in a separately filed motion upon the conclusion of its claims herein.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and furnish copies to counsel. The Clerk of Court is further directed to certify a copy of this Opinion and Order to the Commissioner of the Patent and Trademark Office.

**DATED** this 16th day of March, 2006.

*s/Lonny R. Suko*

LONNY R. SUKO
UNITED STATES DISTRICT JUDGE

ORDER ~ 27