UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VAN WELL NURSERY, INC., a Washington Corp., HILLTOP FRUIT TREES, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>MONY LIFE INSURANCE COMPANY, a New York corporation; A/B HOP FARMS, INC., a Washington corporation; BENNETT G. BRULOTTE and TRACY A BRULOTTE, individually and their marital community; WALLA WALLA PARCEL NO. 31-07-23-11-00-02<br><br>    Defendants.<br>_____<br>MONY LIFE INS. CO., a N.Y. corp.,<br><br>    Third-Party Plaintiff,<br><br>NATIONAL LICENSING ASSOC., LLC., a Washington limited liability company (f/k/a Nursery Licensing Association, LLC),<br><br>    Third-Party Defendant. | NO. CV-04-0245-LRS<br><br>**ORDER** |

ORDER ~ 1

BEFORE THE COURT is third-party plaintiff Mony Life Insurance Company's (MONY") partial summary judgment (Ct. Rec. 153), filed December 1, 2006, with respect to its counterclaims and third-party claims against NLA[1] for violations of Section One of the Sherman Act, 15 U.S.C. §1, and Washington's parallel provision of Washington's Unfair Business Practices/Consumer Protection Act, RCW 19.86.030.

The factual and legal basis for MONY's motion for partial summary judgment is two-fold: 1) the NLA's horizontal membership structure-i.e., plant nurseries who normally compete with each other for market share and brand identity of plant cultivars; and 2) NLA's patent and trademark enforcement tactics launched against ancillary financial lending institutions. MONY alleges that NLA's structure and enforcement tactics constitute both per se and "rule of reason" antitrust violations as a matter of law based on undisputed material facts set forth in MONY's LR 56.1 Statement of Material Facts.

Specifically MONY states that NLA's course of conduct ignored antitrust laws and unfairly elevated the financial self interest of NLA and its members at the expense of the agricultural lending community and consumer social welfare. Further, MONY asserts, part of NLA's mode of

---

[1] On February 5, 2007, during the pendency of this motion, plaintiffs Van Well Nursery, Inc., and Hilltop Fruit Trees, LLC ("Nurseries") and defendant MONY Life Insurance Co. entered a stipulation pursuant to Fed. R. Civ. P. 41(a)(2) that the claims and counter-claims asserted against each other in the above-entitled matter be dismissed with prejudice and without attorneys' fees or costs to any party. Ct. Rec. 173.

ORDER ~ 2

doing business is one categorizing almost all business operations as "trade secrets" resulting in NLA's refusal to divulge any internal business information on that basis. Ct. Rec. 156 at 2-3. This practice, MONY argues, runs afoul of the Federal Trade Commission and U.S. Department of Justice Antitrust Division's "Antitrust Guidelines for Collaborations Among Competitors" issued on April 7, 2000, which, in itself, actually creates antitrust liability for NLA. Id. At 3-4. MONY concludes that the antitrust injury flowing from the alleged antitrust wrong, is MONY's litigation expenses incurred in the defense of NLA's intellectual property infringement suit, allegedly pursued in bad faith, in the instant case.

A. Statement Of Facts.

This case involves a for-profit Washington limited liability company, the NLA, whose purpose is to enforce the plant patent and trademark rights of others at standardized rates and to share proceeds of its enforcement efforts with its plant nursery members. MONY's SMF[2] ¶1. The NLA membership is comprised of at least 18 plant nurseries in the United States who are otherwise competitors of each other. Id. at ¶2. Each plant nursery entered into a Plant Patent and Trademark Collection Agreement with the NLA. In this agreement, the plant nursery agrees to assign to the NLA its plant patent and trademark enforcement rights in return for a percentage recovery of the proceeds of NLA's enforcement activities on behalf of all NLA members. Id. at ¶3. Despite

---

[2] MONY has "distilled" its statement of material facts in Ct. Rec. 156 at 5-7.

ORDER ~ 3

Court rulings made earlier in this case that the plant patent and trademarks were invalidly assigned to NLA, NLA has not re-assigned those rights back to the plant nurseries nor has NLA taken steps to alter the USPTO public records which still purport to show that NLA has been assigned patent and trademark enforcement rights of various NLA members. Id. at ¶11.

B.  MONY'S ARGUMENTS

MONY argues that the NLA form and structure is not exempt from application of federal or state antitrust laws under any recognized antitrust exemption. MONY further argues that NLA had no good faith basis for any belief that its activities were exempt from the application of the antitrust laws. Ct. Rec. 156 at 5. MONY argues that assignment of plant patent "rights to sue" to alleged infringers have long been invalid in the United States and constitute a form of patent misuse. The NLA, MONY asserts, had no good faith basis for believing that such assignments were valid and enforceable. MONY additionally argues that assignment of trademark "rights to sue" are invalid and unenforceable as a form of "naked licensing" under binding legal precedent. Id. at 6.

MONY further argues that "[b]y amassing the patent and trademark rights of individual plant nursery owners under the control of the NLA, the NLA gained tactical leverage in obtaining standardized licensing fees and recoveries from those engaged in agricultural lending activities." Ct. Rec. 156 at 6. As a result of NLA tactics, MONY asserts that there was an increased unwillingness of agricultural financial lending institutions to grant loans and an increase in the cost of agricultural loan transactions.

ORDER ~ 4

1    Finally, MONY points out that NLA's claim that its activities and
2 membership constitute protectible trade secrets reinforces the economic
3 advantage gained by organizing horizontal competitors into a group cartel
4 because, by definition, a trade secret can only be a trade secret if it
5 confers an economic advantage.  Id. at ¶10.

6 C.  SUMMARY JUDGMENT STANDARD APPLICABLE IN ANTITRUST CASES

7    Motions for summary judgment are particularly disfavored in
8 antitrust actions because motive and intent are so important, and the
9 proof is often in the hands of the defendants. *Poller v. CBS*, 368 U.S.
10 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Hospital Building Co. v.*
11 *Trustees of Rex Hospital*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338
12 (1976); *Fusco v. Xerox Corporation*, 676 F.2d 332 (8th Cir.1982).  MONY
13 asserts that "[h]ow NLA organizes itself internally remains a black box,
14 shrouded in alleged trade secrets . . ." (Ct. Rec. 163 at 2) suggesting
15 that at least some proof that is needed to succeed on this motion for
16 partial summary judgment is in the hands of NLA.

17    In general, it is difficult to resolve antitrust cases on summary
18 judgment because of their factual complexity. See *Rickards v. Canine Eye*
19 *Registration Found.*, 783 F.2d 1329, 1332 (9th Cir.1986). This does not
20 mean, however, that a district court may not award summary judgment when
21 appropriate. *See Bhan v. NME Hosp., Inc*., 929 F.2d 1404, 1409 (9th
22 Cir.1991). In fact, an appropriate award of summary judgment may save the
23 parties and the courts from unnecessarily spending the extraordinary
24 resources required for a full-blown antitrust trial. *See id.*

25    The Supreme Court's decision in *Matsushita* significantly clarified
26 the standards for resolving summary judgment cases in the antitrust

arena. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538, 585-88 (1986). Since that time, the Ninth Circuit has shown on numerous occasions that summary judgment on an antitrust claim may be appropriate. *See Bhan*, 929 F.2d at 1409.

No special burden exists for summary judgment in antitrust cases. *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 US 451, 119 L Ed 2d 265, 112 S Ct 2072 (1992). If a material issue of fact exists then the matter should proceed to trial and summary judgment should not be granted. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 US 574, 89 L Ed 2d 538, 106 S Ct 1348 (1986).

    1. SHERMAN ACT § 1 VIOLATION/RCW 19.86 VIOLATION

MONY claims that there have been violations of Sherman Act § 1(15 U.S.C. § 1). In order to sustain a cause of action under this section of the Sherman Act, the claimant must prove anti-competitive effects within the relevant product and geographic markets. *Martin B. Glauser Dodge Co. v. Chrysler Corp.*, 570 F.2d 72 (3d Cir. 1977); *American Motor Inns, Inc. v. Holiday Inns Inc.*, 521 F.2d 1230 (3d Cir. 1975).

   a. Standing

The antitrust injury requirement specifies that to have standing under the antitrust laws, the plaintiff must have suffered "antitrust injury," meaning "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendant's acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S. Ct. 690, 50 L. Ed. 2d 701, 1977-1 Trade Cas. (CCH) P 61255 (1977). Implicit in this definition are two separate conceptual issues. First,

ORDER ~ 6

the claimed injury must be of a type that the antitrust laws were meant to discourage (e.g., lost profits from a reduced ability to compete, as opposed to lost profits from increased competition in the market). And second, the plaintiff's injury must have been proximately caused by the defendant's antitrust violation, and not by some other act or event. More simply, to satisfy the antitrust injury requirement, a plaintiff must be "adversely affected by an anticompetitive aspect of the defendant's conduct." *Atlantic Richfield Co. V. USA Petroleum Co.*, 495 U.S. 328, 339 (1990) (citations omitted).

MONY asserts the cost of litigation incurred in the defense of the intellectual property infringement suit in this case is the sort of antitrust injury recognized as compensable. *See Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 997 (9th Cir. 1979)(holding costs of litigating a frivolous suit are cognizable under the antitrust laws). A liberal construction of the complaint and pleadings demonstrates that MONY has alleged a cognizable antitrust injury under the antitrust laws. NLA's litigation against MONY, arguably an anticompetitive aspect of NLA's conduct considering the basis (or lack thereof) for NLA's enforcement rights, affected MONY's business in a negative way.

### b. Antitrust Claim Elements

The Court agrees with MONY that to establish a section 1 violation under the Sherman Act in the Ninth Circuit, a plaintiff must demonstrate three elements: (1) an agreement, conspiracy, or combination among two or more persons or distinct business entities; (2) which is intended to harm or unreasonably restrain competition; and (3) which actually causes injury to competition, beyond the impact on the claimant, within a field

of commerce in which the claimant is engaged (i.e., "antitrust injury"). *See Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211 (9th Cir.1987); *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir.1983); *Rickards v. Canine Eye Registration Found.*, 783 F.2d 1329, 1332 (9th Cir.), *cert. denied*, 479 U.S. 851, 107 S.Ct. 180, 92 L.Ed.2d 115 (1986); *Cascade Cabinet Co. v. Western Cabinet & Millwork*, 710 F.2d 1366, 1373 (9th Cir.1983).

The Sherman Act's prohibition against concerted activity in restraint of trade is analyzed under either the "per se" rule or the "rule of reason." The per se analysis is applied to practices that are presumptively illegal, such as (1) horizontal and vertical price-fixing; (2) horizontal market division; (3) group boycotts and concerted refusals to deal; and (4) tie-in sales. *See Cascade Cabinet Co.*, 710 F.2d at 1370. The per se rule governs only if the practice at issue "facially appears to be one that would always or almost always tend to restrict competition and decrease output." *National Collegiate Athletic Association v. Board of Regents of University of Oklahoma*, 468 U.S. 85, 104 S.Ct. 2948, 2960, 82 L.Ed.2d 70 (1984) (*quoting Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*, 441 U.S. 1, 19-20, 99 S.Ct. 1551, 1562, 60 L.Ed.2d 1 (1979)). When a plaintiff establishes that the defendants engaged in conduct clearly falling within one of the categories to which the per se rule applies, it is not necessary to show actual anticompetitive effect; such effect is presumed. *See Northern Pacific Railway v. United States*, 356 U.S. at 5, 78 S.Ct. at 518.

MONY has analyzed its case under both the "per se" rule and the "rule of reason," alleging that antitrust violation can be proven under either analysis.

It is at this juncture that MONY fails in its effort to establish a per se violation of section 1 of the Sherman Act[3] sufficient for summary judgment purposes. MONY has failed to show sufficient adverse effect upon competition. The only evidence in the record before the Court about the marketplace and competition is that the NLA is made up of at least 18 plant nurseries in the United States who are otherwise competitors of each other. Even if MONY had shown that the restraint had injured competition, the Court would be reluctant to apply the per se rule because of the lack of experience by the courts with the challenged conduct. "It is only after considerable experience with certain business relationships that courts classify them as per se violations." *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*, 441 U.S. at 9, 99 S.Ct. at 1557; *quoting United States v. Topco Associates, Inc.*, 405 U.S. 596, 607-08, 92 S.Ct. 1126, 1133, 31 L.Ed.2d 515 (1972).

Conduct that is not conclusively presumed to be illegal under the per se rule must be proved to be unreasonable under the rule of reason test. Rule of reason analysis calls for a "thorough investigation of the industry at issue and a balancing of the arrangement's positive and negative effects on competition." *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1050 (9th Cir.1983). The rule of reason requires

---

[3]This holds true for Washington's parallel provision of Washington's Unfair Business Practices/Consumer Protection Act, RCW 19.86.030.

ORDER ~ 9

" 'the fact-finder to decide whether under all the circumstances of the case the restrictive practice imposes an unreasonable restraint on competition.' " *Arizona v. Maricopa County Medical Soc'y*, 457 U.S. 332, 343, 102 S.Ct. 2466, 2472, 73 L.Ed.2d 48 (1982)).

MONY states, citing *MetroNet Services Corp. V. U.S. West Communications*, 383 F.3d 1123, 1130 (9th Cir.2004), that an analysis of "market power" is not necessary in this case because it has not alleged a violation of §2 of the Sherman Act. The Court, however, needs more to find MONY is entitled to partial summary judgment. Proof that the defendant's activities had an impact upon competition in a relevant market is an absolutely essential element of the rule of reason case. *Kaplan v. Burroughs Corp.*, 611 F.2d 286, 291 (9th Cir.1979), *cert. denied*, 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980). It is the impact upon competitive conditions in a definable market which distinguishes the antitrust violation from the ordinary business tort.

The balancing process of the rule of reason is not applied to a particular agreement or practice until after the plaintiff has established that the challenged conduct constitutes a restraint on competition. *Gough v. Rossmoor Corp.*, 585 F.2d 381, 389 (9th Cir.1978), *cert. denied*, 440 U.S. 936, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979). To establish a cause of action for an unreasonable restraint of trade in violation of section 1 under the rule of reason, the plaintiff must show the following elements: "(1) an agreement among two or more persons or distinct business entities; (2) which is intended to harm or unreasonably restrain competition; and (3) which actually causes injury to

ORDER ~ 10

competition." *Reid Brothers Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1296 (9th Cir.1983).

MONY's attempt to establish a rule of reason violation fails for the same reason as its attempt to establish a per se violation: there is insufficient evidence of injury to competition for purposes of summary judgment. Although MONY complains of its litigation expenses incurred, economic injury to a competitor, or in this case a noncompetitor or ancillary lending institution, does not equal injury to competition in the marketplace. *Mutual Fund Investors, Inc. v. Putnam Management Co., Inc.*, 553 F.2d 620, 627 (9th Cir. 1977). The Ninth Circuit has stressed that "[i]t is injury to the market, not to individual firms, that is significant." See *Klamath-Lake Pharmaceutical Ass'n v. Klamath Medical Service,* 701 F.2d 1276, 1292 (9th Cir. 1983).

MONY argues that the purportedly frivolous NLA litigation coupled with the improper assignment of indivisible patent and trademark enforcement rights to a collective entity resulted in an impact upon competition thus constituting the antitrust liability. The record is not sufficient to satisfy the Court regarding the impact on the relevant market and competition for MONY to be entitled to partial summary judgment.

### 2. PATENT MISUSE DOCTRINE

The patent misuse doctrine is an extension of the equitable doctrine of unclean hands, whereby a court of equity will not lend its support to enforcement of a patent that has been misused. See *Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 668, 231 USPQ 363, 368 (Fed.Cir.1986). Patent misuse arose, as an equitable defense available to the accused infringer,

from the desire "to restrain practices that did not in themselves violate any law, but that drew anticompetitive strength from the patent right, and thus were deemed to be contrary to public policy." *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 704, 24 USPQ2d 1173, 1176 (Fed.Cir.1992).

The policy of "patent misuse doctrine" is to prevent a patentee from using a patent to obtain market benefit beyond that which inures in statutory patent right. *Monsanto Co. v. McFarling*, 363 F.3d 1336, 70 U.S.P.Q.2d (BNA) 1481, 2004-1 Trade Cas. (CCH) P 74358 (Fed. Cir. 2004), petition for cert. filed (U.S. July 6, 2004).

Since the creation of the doctrine of patent misuse almost seventy years ago, the Supreme Court has consistently distinguished between patent misuse and violations of the antitrust laws. See *Zenith Radio Corp. v. Haseltine Research, Inc.*, 395 U.S. 100, 14041 (1969); *Transparent-Wrap Machine Corp. v. Stokes & Smith Co.*, 329 U.S. 637, 641 (1947); *Morton Salt Co. v. G.S. Suppiger* Co., 314 U.S. 488, 494 (1942).

Although the patent misuse doctrine and the antitrust doctrine are independent bodies of law, many of the same public policy considerations underlie both misuse and antitrust cases, so that in an action where improprieties in the use of intellectual property are alleged, either or both doctrines may apply.  While one who misuses a patent does not also necessarily violate antitrust laws, one who violates antitrust laws by inappropriate use of a patent is necessarily guilty of patent misuse. *Hunter Douglas, Inc. v. Comfortex Corp.*,44 F.Supp.2d 145, 156 (N.D.N.Y.1999).

Whereas patent misuse has traditionally been used defensively by a licensee or competitor charged with intellectual property infringement, it has also recently been used offensively. *Grid Systems Corp. v. Texas Instruments, Inc.*, 771 F.Supp. 1033 (N.D. Cal. 1999). The "misuse" doctrine has even been expanded to cover other forms of intellectual property, such as copyrights and trademarks. *Lasercomb America, Inc. v. Reynolds*, 911 F2d 970 (4th Cir. 1990). The Supreme Court has not expressly recognized copyright and trademark misuse, but has strongly suggested their validity as defenses. *United States v. Loew's, Inc.*, 371 U.S. 38 (1962); *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*, 441 US 1 (1979).

MONY appears to argue patent misuse in two ways. MONY first states that the alleged antitrust violation, which is sufficiently related to the patent(s), is a patent misuse. As discussed above, the Court finds for purposes of this motion that the record does not support all elements of an antitrust violation. Therefore a patent misuse finding cannot be based on a finding of antitrust. Looking at MONY's other patent misuse assertion, i.e., that through invalid assignments of 'rights to sue' and/or enforcement practices NLA has engaged in patent misuse, the Court finds triable issues exist. The Court, however, is not asked to analyze the offensive claim of patent misuse in this motion before it.

       3.  NLA ANTITRUST IMMUNITY

In its briefing, NLA contends it has antitrust immunity and requests this Court to find that it is immune from any antitrust allegations under the Capper-Volstead Act and its Washington counterpart RCW Ch. 24.34; and the Noerr-Pennington immunity doctrine. A review of those statutes and

related case law does NOT suggest obvious grounds for immunity. However, insufficient facts are currently known to make such a determination. No ruling is necessary at present in light of the Court's disposition of Mony's motion.

D. CONCLUSION

As to the antitrust claim, the record does not demonstrate the impact on the relevant market and effects from the alleged anticompetitive conduct for entitlement to summary judgment. MONY has not presented evidence for the trier of fact to conclude as a matter of law that NLA is engaged in a form of unreasonable or illegal restraint of trade.

Additionally, "[p]atent misuse is viewed as a broader wrong than antitrust violation because of the economic power that may be derived from the patentee's right to exclude." *C.R. Bard*, Inc. v. MS Systems, Inc., 157 F.3d 1340, 1372 (Fed.Cir.1998). Accordingly, "misuse may arise when the conditions of antitrust violation are not met." *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 140-41, 89 S.Ct. 1562, 23 L.Ed.2d 129, 161 USPQ 577, 597 (1969). The record presents fact issues as to patent misuse, which, together with fact issues as to the antitrust claim, preclude summary judgment. *See Sonobond Corp. v. Uthe Technology, Inc.*, 314 F.Supp. 878 (D.C.Cal. 1970).

**IT IS HEREBY ORDERED** that Third-party plaintiff Mony Life Insurance Company's partial summary judgment, **Ct. Rec. 153**, filed December 1, 2006, is **DENIED**.

///

///

1  **IT IS SO ORDERED.** The District Court executive is directed to enter
2  this order and provide copies to counsel.
3  **DATED** this 6th day of March, 2007.

4  *s/Lonny R. Suko*
   _____
5  LONNY R. SUKO
   UNITED STATES DISTRICT JUDGE

ORDER ~ 15